140 So.2d 241 (1962)
Etienne J. DARENSBOURG
v.
COLUMBIA CASUALTY COMPANY.
No. 372.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 1962.
Rehearing Denied May 7, 1962.
Certiorari Denied June 15, 1962.
*242 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Michael J. Molony, Jr., New Orleans, for defendant-appellant.
Roccaforte & Rousselle, Leo W. Rousselle, New Orleans, for plaintiff-appellee.
Before McBRIDE, YARRUT and SAMUEL, JJ.
SAMUEL, Judge.
This is a suit against the liability insurer of a City of New Orleans truck to set aside a release plaintiff had executed in favor of defendant and the city and to recover personal injury and property damages sustained when the truck ran into the rear of plaintiff's automobile. Defendant has appealed from a judgment annulling and rescinding the release "* * * only insofar as plaintiff's claim for personal injuries is concerned; * * *" and awarding plaintiff $562.00 for personal injuries and medical expenses.
In substance the petition alleges that: plaintiff had stopped in compliance with a red traffic signal when the truck collided with the rear end of his car as a result of which he sustained personal injuries and the car was damaged to the extent of $229.28; he was paid $229.28 for the property damage and signed a general release believing that he had not been injured in the accident; he had not intended to release his claim for personal injuries, no consideration was paid therefor, and he had signed the release believing it covered only *243 property damages and did not include damages for personal injuries; thus he had acted under an error and mistake of fact.
The answer admitted the accident, defendant's corporate capacity, the insurance coverage and the payment of $229.28. It denied all other allegations and pleaded the release. Then, in successive alternative pleas, defendant alleged plaintiff's negligence as the sole cause of the accident and contributory negligence. At the opening of the trial on the merits defendant stipulated that the accident resulted solely from the negligence of its driver.
The accident happened on April 29, 1958. Plaintiff had been told by third parties "You are lucky if you get your money" out of the City of New Orleans and was in a hurry to get his damages paid. Immediately after the collision he contacted, and had several conversations with, both the person handling claims for the city and defendant's adjuster, Bily. All of his conversations with Bily were by telephone and the first occurred on April 30, the day following the accident. Bily had an appraisal made of the damaged car and mailed a release to plaintiff on May 6. The consideration stated in the release, and subsequently paid, was $229.28, the amount of the appraised damages. The morning after receiving the release through the mails, May 7, plaintiff brought it to defendant's office. There he signed the document and received defendant's draft for $229.28. He immediately endorsed and cashed the draft by depositing the same in his bank account. Plaintiff admitted in his testimony that he had read the release and he did not deny that he had read the draft.
The following night, May 8, plaintiff experienced severe pain in the region of his neck and the next day, May 9, saw his physician, who found him to be suffering from a strain or sprain of the cervical muscles (the injury commonly referred to as "whiplash") resulting from the accident. It was a mild whiplash and, after undergoing some treatment, plaintiff was discharged as completely recovered on June 13.
Plaintiff testified that he did not know he was injured in the accident until his doctor so informed him. Within two days after the accident he did suffer pain which got progressively worse. The pain was "bad" on Friday, May 2, the third day, and became unbearable during the night of May 8. He first thought the pain was caused by an approaching cold and made use of common home remedies. During the night of May 8 he thought he had a broken collar bone.
The medical testimony (one such expert was called by each side) is to the effect that whiplash symptoms usually manifest themselves within a few hours to twenty-four hours but on some occasions will do so as late as seventy-two hours. Often the pain is mild at first but becomes progressively worse until it is severe in three to five days.
The document signed by plaintiff releases and discharges defendant and its insured from "* * * all, and all manner of action and actions, cause and causes, suits, damages, judgments, executions, claims and demands whatsoever, * * *" which plaintiff had or thereafter shall or may have. On the face of the draft given to plaintiff appears the statement "In payment in full for all damages done person and property of Etienne D'Arensbourg on or about 4-29-58." On the back of the draft, just above plaintiff's endorsement, is this statement: "Endorsement of this draft constitutes a release in full, for account as stated herein."
During the conversations between plaintiff and defendant's adjuster the question of personal injuries was neither discussed nor mentioned; all that was considered was the cost of repairing the damages done to the automobile. Plaintiff admitted in his testimony that he had no complaints against the adjuster and this case does not involve *244 fraud or misrepresentation; there is a total absence of both.
The trial court found as a fact that plaintiff did not know he had been injured until after he had cashed the draft and that he entered into the compromise under an error of fact.
One of the contentions urged by defendant is that this case involves a splitting of a single cause of action, a procedure prohibited under our law both by the jurisprudence applicable to the instant case and, more recently, by Article 425 of the LSA-Code of Civil Procedure. Thompson v. Kivett & Reel, La.App., 25 So.2d 124 and cases cited therein.
We agree the judgment appealed from is not literally proper in that it cancels and annuls the release and compromise only insofar as the claim for personal injuries is concerned and upholds the same, and the payment made thereunder, insofar as the transaction relates to property damages. We also agree that the compromise settlement can only be held to be valid or invalid in its entirety. However, this one feature is not finally determinative of the case because of the fact that the plaintiff's petition makes no attempt to split his cause of action; it correctly prays that the release be annulled and cancelled and that plaintiff be awarded judgment for his property damages and personal injuries. It is apparent that the form of the judgment resulted from the stipulation by defendant to the effect that the accident was caused solely by its driver's negligence, which stipulation, understandably so because of the manner in which it was offered and received during the trial (no attempt was made by either side to prove the amount of property damage), was construed by the trial court as an admission of liability for property damages to the extent of the payment. If this were the only question involved we could and would reach the same final conclusion regarding liability as did the trial court and simply remand for the purpose of giving both litigants an opportunity to offer evidence as to the amount of damage to plaintiff's car.
We attach far greater importance to defendant's contention that the compromise prevents a recovery by plaintiff. Under LSA-Civil Code Article 3078 a transaction or compromise has, between the parties, an effect equal to the thing adjudged and cannot be attacked on account of error in law or lesion. Other articles here pertinent are:
"Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
"The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises." LSA-Civil Code, Article 3073.
"A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence." LSA-Civil Code, Article 3079.
It is difficult to believe that, on or before he signed the general release agreement and endorsed and deposited the draft releasing defendant from all claims for personal injuries and property damages, plaintiff did not know he had sustained the whiplash injury in the accident. Certainly he should have known. The release was executed on the eighth day after the accident and the draft was endorsed and deposited on either the same or the following day. The pain evidenced itself within two days after the accident, progressively became worse, *245 was "bad" the third day and intense, requiring immediate medical attention, on the ninth day. At the time he consulted his physician the accident was the only incident plaintiff could remember which could have caused the injury to his neck.
We are certain of one important fact. At the time he executed the general release and deposited the draft plaintiff knew the compromise released defendant from any claim for his personal injuries. He had read the release and could have read (he probably did read) the statement contained in the draft; he had possession of both documents out of the presence of any representative of the defendant. The compromise was entered into in complete good faith on the part of both parties, at "arm's length", without fraud or misrepresentation of any kind, and at the instigation and insistence of plaintiff alone. We conclude that the compromise effectively releases the defendant from plaintiff's claims.
We are of the opinion that the cases relied upon by plaintiff are not apposite. Those cases are: Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911; McDaniel v. Audubon Insurance Company, La.App., 121 So.2d 531; and Succession of Aymond, 202 La. 469, 12 So.2d 233. In Moak the injuries were serious and known, plaintiff did not know or intend that the instrument signed by her would release the defendant from her claim for personal injuries, and the conduct of defendant's adjuster was such as to warrant and give rise to this misunderstanding or error on the part of plaintiff as to the subject matter of the release. In McDaniel the injuries were serious, the draft revealed that the settlement was for a property claim, and plaintiff did not know the instrument compromised his personal injury claim due to the fact that he was unable to read or write and the compromise agreement was never read to him. Aymond specifically held that the agreement therein involved was not a compromise settlement within the meaning and contemplation of the codal articles on transaction and compromise. On the other hand, the principal case relied upon by defendant, Thompson v. Kivett & Reel, La.App., 25 So.2d 124, is closer to being in point, although in that case plaintiff admittedly knew, prior to the settlement, that he had suffered an injury and the settlement was for $5.00 more than the higher of two property damage estimates submitted to counsel for defendant.
In the instant case we attach no significance to the fact that the amount paid by defendant was the exact amount of the damages to plaintiff's car as shown by the appraisal. Plaintiff argues that, there being no dispute as to the quantum of the damages or the liability of the defendant, there could be no compromise. We do not agree. The record does not reveal the absence of a dispute about liability. The same could have existed despite the fact that the defendant was willing to settle all claims against it for the amount of property damages actually suffered. At the time the compromise was entered into defendant could have considered its liability doubtful. In any event it was not required to pay without first having its day in court. This is the very essence of compromise.
For the reasons assigned, the judgment appealed from is annulled and reversed and, accordingly, it is now ordered that there be judgment in favor of the defendant and against the plaintiff, dismissing plaintiff's suit at his cost in both courts.
Reversed.