311 So.2d 58 (1975)
Edward SENEGAL and Evelyn P. Senegal, Plaintiffs-Appellees,
v.
Yvonne A. DELAHOUSSAYE and General Accident Fire and Life Assurance Corporation, Ltd., Defendants-Appellants.
No. 4920.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1975.
Rehearing Denied May 1, 1975.
L. H. Olivier, Lafayette, for defendants-appellants.
Domengeaux & Wright, by William H. Lambert, Lafayette, for plaintiffs-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Mr. and Mrs. Edward Senegal claim damages to their automobile resulting from a collision which occurred while their car was being driven by Mrs. Senegal's father, Joseph Patio. The defendants are Yvonne Delahoussaye and her insurer, General Accident Fire and Life Assurance Corporation, Ltd. Defendants answered, and they filed exceptions of non-joinder and res judicata, and a petition for a declaratory judgment in which they impleaded Joseph Patio as a party to the suit.
Judgment was rendered by the trial court overruling the exceptions filed by defendants, rejecting the latter's demand for a declaratory judgment, and condemning defendants to pay damages to plaintiffs in the amount of $700.00. Defendants appealed.
The sole issue presented is whether plaintiffs' claim was settled by transaction or compromise prior to the trial.
The accident occurred on February 3, 1973, when an automobile owned by plaintiffs *59 and being driven by Patio collided with a vehicle being driven by defendant Delahoussaye. The Delahoussaye car was insured by defendant General Accident. Shortly after the accident occurred the Senegals and Patio engaged a Lafayette law firm to recover damages resulting from the accident. Mr. Fred Smith, a member of that firm, wrote to Miss Delahoussaye on March 13, 1973, as follows:
"On behalf of Evelyn Senegal, owner of the 1968 Ford which was involved in an accident with your automobile on February 3, 1973, we advise that she will accept the sum of $895.00 in complete settlement of the loss of her automobile. Also, her father, Joseph Patio, the driver of the automobile at the time of the accident, will execute a release of all his claims.
"Kindly have your insurer contact me in connection with this matter."
Miss Delahoussaye sent that letter to General Accident's agency in Sunset, Louisiana, and that agency forwarded it to the insurer's office in Metairie, Louisiana. The Metairie office received it on March 23, and the claim was turned over to Miss Judith Mund, a claims adjuster for General Accident. Miss Mund telephoned Fred Smith on March 27, and they orally agreed in that telephone conversation to settle the case for $895.00, and to apportion that payment as follows: $700.00 to the Senegals, and $195.00 to Patio. Miss Mund testified that they agreed that she was to prepare a form of written release to be signed by Mr. and Mrs. Senegal and Patio, that she would send that form of release with a draft for $895.00 to Smith, and that Smith was to deliver the draft to the payees and have the release properly executed and returned to Miss Mund. She testified that she prepared the form of release and mailed it with a draft for $895.00 to Smith on March 27, 1973.
On April 2, 1973, Mr. William H. Lambert, an attorney who also is a member of the Lafayette law firm to which Smith belongs, wrote to defendant General Accident the following letter:
"From our previous correspondence you are aware this Firm represents Evelyn Senegal and Joseph Patio in their claim for property damage and personal injuries arising out of an automobile collision that occurred on February 3, 1973 at the intersection of East Simcoe and Argonne Streets, Lafayette, Louisiana. This claim will be handled by the undersigned to its conclusion.
"You are advised the property damage claim of Evelyn Senegal can be resolved for $895.00, provided this is promptly accomplished. The claim for personal injuries and medical expenses in behalf of Joseph Patio is, of course, a separate claim.
"Mr. Patio sought medical attention from his family physician on Sunday, the day following the accident. In addition, he is undergoing a course of conservative treatment from Dr. J. Boring Montgomery.
"From my conversations with Dr. Montgomery, it appears Mr. Patio will continue to experience pain and disability for sometime to come. And for this reason Mr. Patio demands payment of the medical expenses he has incurred and general damages of $3,500.00.
"Please give this demand your prompt attention."
The above letter was received in the office of the defendant insurer on April 3. Immediately after receiving that letter the following day, Miss Mund telephoned Smith and asked him whether the compromise agreement was still in effect. She quoted Smith as saying that he was not aware of the fact that Lambert had taken over the handling of this matter, and she testified that during that conversation she did not ask Smith whether he had received the form of release or the draft, and that *60 Smith did not mention that he had received or seen those documents. This suit was filed on May 14, 1973.
At the trial, defendants offered in evidence a form of release which had been prepared for the signatures of Patio and of Mr. and Mrs. Senegal, but which had never been executed by any of those parties. They also filed in evidence a draft for $895.00, drawn on the account of General Accident in a Philadelphia bank, and made payable to the order of Mrs. Senegal, Patio and Fred Smith, attorney. This draft is dated March 27, 1973. It has never been endorsed or presented for payment.
Miss Mund testified that she mailed the form of release and draft to Smith on March 27, 1973, before she received the above letter from Lambert. She concedes that the release has never been executed and that the draft has never been endorsed or presented for payment. She stated that she did not see either of those documents from the time she mailed them to Smith until the date of the trial.
Attorney Fred Smith testified that in the telephone conversation which took place on March 27, 1973, he and Miss Mund orally agreed to settle the claim for $895.00, and to apportion a part of that payment to the Senegals and a part of it to Patio. He stated, however, that when he wrote the letter of March 13 he did not know that Patio had sustained any injuries at all, that he wrote that letter with the intent of settling only the claim of the Senegals for damages to their car, and that he voluntarily included in the letter a statement that Patio also would sign the release. His understanding was that a check for the amount of the settlement would be forthcoming, but he stated that he never received a check or a draft from Miss Mund or the defendant insurer, and that he never received a form of release to be executed by his clients. He testified that he did not know that a draft had been issued until about a week before the trial, which was held on July 24, 1973, when he saw a photostat of the draft.
The trial judge held that the letter written by Lambert on April 2, 1973, had the effect of changing the terms of the settlement offer which previously had been made by Smith on March 13. He found that the form of release and the draft were not mailed to plaintiffs' counsel until May 27, 1973, long after the original offer of compromise had been withdrawn, and that the mailing of those documents at that time did not complete or effect a transaction or compromise under the terms set out in the letter of March 13, 1973. In so holding, the trial judge stated that "Subsequently, on May 27, 1973, the defendant insurer sent a draft dated March 27, 1973, with release papers for signature to plaintiffs' attorney Fred M. Smith," and that "it was only after receipt of the second letter that the defendant insurer forwarded its draft and papers". We cannot say that the trial court erred in arriving at that factual conclusion.
Transaction or compromise is defined in Article 3071 of Louisiana Civil Code as follows:
"Art. 3071. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
"This contract must be reduced in writing."
The above article requires that every transaction or compromise be in writing. See Charbonnet v. Ochsner, 258 La. 507, 246 So.2d 844 (1971); Lytle v. Commercial Insurance Company of Newark, N. J., 285 So.2d 289 (La.App. 3rd Cir. 1973); Stablier v. Partin, 278 So.2d 537 (La.App. 1st Cir. 1973). Our jurisprudence is established that a writing evidencing a compromise must be complete in itself, that it must show the intention of the parties to compromise their differences, and that it *61 must be independent of parol testimony to establish its meaning. A writing will not be considered to be a transaction or compromise if the court must receive parol evidence in order to reach that conclusion. Trask v. Lewis, 258 So.2d 603 (La.App. 1st Cir. 1972); Bugg v. State Farm Mutual Automobile Insurance Company, 295 So.2d 194 (La.App. 4th Cir. 1974).
Defendants argue that the letter written by Attorney Smith on March 13 constituted a written offer to compromise the claim of plaintiffs, as well as any claim which Patio may have. They contend that the mailing of the form of release and the draft to Smith constituted a written acceptance of that offer, and that the exchange of those letters and documents constituted a written compromise agreement which was valid and binding. That argument is based on the assumption, of course, that the form of release and the draft actually were mailed to plaintiffs' counsel before the offer was withdrawn, or modified, on April 2, 1973. We agree with the finding of the trial judge that the release form and draft were not mailed before the original offer was amended, and that the mailing of those documents on a later date did not effect a transaction or compromise.
We conclude that plaintiffs' claim in this suit has not been settled by transaction or compromise. The trial judge held correctly, therefore, that plaintiffs are entitled to maintain this action for damages to their automobile resulting from the above mentioned accident.
Since we have concluded that a compromise agreement was not effected, the exception of res judicata was properly overruled, and it is unnecessary that Patio be impleaded or that a declaratory judgment be rendered as prayed for by defendants.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.